UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LOISKA J.,

       *Plaintiff*,

    v.

COMMISSIONER OF SOCIAL SECURITY,

       *Defendant*.

No. 24-cv-00269 (MEF)

**OPINION and ORDER**

**Table of Contents**

I.   **Background**
    **A.**    **Procedural History**
    **B.**    **Legal Framework**
    **C.**    **This Case**
II.  **Step Three**
    **A.**    **Paragraph B**
    **B.**    **Paragraph C**
III. **Residual Functional Capacity**
IV.  **Conclusion**

\*   \*   \*

A woman applied for Social Security disability benefits and was denied.

She filed this lawsuit to challenge the denial.

The Court concludes that the denial was mainly supported by substantial evidence, as it needed to be.

But the Court also concludes that a limited remand for further proceedings is necessary as to two particular issues.

\*   \*   \*

## I.   Background

### A.   Procedural History

The Commissioner of Social Security (from here, "the Commissioner") denied an application for disability benefits. See Plaintiff's Moving Brief ("Plaintiff's Brief") (ECF 9) at 4–5.

The applicant[1] challenged the denial, and this Court, through Judge Zoss, reversed the Commissioner's decision and remanded the case for reconsideration.  See Johnson v. Comm'r of Soc. Sec., No. 17-cv-11765, slip op. at 2 (D.N.J. Jul. 24, 2019) (ECF 17).

On remand, a proceeding was held before an administrative law judge ("ALJ") and the Commissioner, acting on the ALJ's decision, again denied the application.[2]

The applicant now challenges the Commissioner's second denial and asks that it be reversed or remanded.  See Plaintiff's Brief at 5–6.

From here, the applicant is called "the Plaintiff."

### B.   Legal Framework

"To qualify for disability benefits, a claimant must be disabled under the Social Security Act." Fouch v. Barnhart, 80 F. App'x 181, 184 (3d Cir. 2003).

"An individual is disabled for purposes of the . . . Act . . . only if his . . . 'impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010) (quoting 42 U.S.C. § 423(d)(2)(A)).

"The Social Security Administration has promulgated a five-step evaluation process to determine whether an individual is

---

[1]  Loiska J.

[2]  The ALJ's 19-page written opinion is at Loiska J. (S.S.A. A.L.J. Oct. 4, 2023).  It can be found beginning at page 373 of the administrative record.  The administrative record is at ECF 4, and is abbreviated from here as "AR."

2

disabled." <u>Jones</u> v. <u>Barnhart</u>, 364 F.3d 501, 503 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520; <u>Plummer</u> v. <u>Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999)).

At step <u>one</u>, the Commissioner looks to whether a benefits applicant is doing any "substantial gainful [work] activity." 20 C.F.R. § 404.1520(a)(4)(i).

If yes, the applicant is not considered disabled, and that is the end of the road. <u>See</u> <u>id.</u>; <u>id.</u> § 404.1520(b). No benefits are provided. <u>See</u> <u>Jones</u>, 364 F.3d at 503.

If the applicant is not engaged in "substantial gainful [work] activity," then the analysis moves to step two. <u>See</u> 20 C.F.R. § 404.1520(a)(4).

At step <u>two</u>, the Commissioner asks whether the applicant has a "severe medically determinable physical or mental impairment . . . or a combination of [such] impairments." 20 C.F.R. § 404.1520(a)(4)(ii).

If no, the analysis ends. The applicant is not considered disabled, and does not get benefits. <u>See</u> <u>id.</u>; <u>id.</u> § 404.1520(c); <u>Jones</u>, 364 F.3d at 503.

If yes, on to step three. <u>See</u> 20 C.F.R. § 404.1520(a)(4).

At step <u>three</u>, the question is whether there is a close-enough equivalency between (i) the applicant's physical or mental impairments, and (ii) a "listing" --- one of the particular impairments spelled out ("list[ed]") in certain regulations. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iii).

If there is an equivalency, the applicant "is <u>per</u> <u>se</u> disabled and no further analysis is necessary." <u>Burnett</u> v. <u>Comm'r of</u> <u>Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). He is entitled to benefits. <u>See</u> <u>Jones</u>, 364 F.3d at 503.

If there is no equivalency --- if there is daylight between (i) and (ii) --- then the analysis goes to step four. <u>See</u> 20 C.F.R. § 404.1520(a)(4).

At step <u>four</u>, the Commissioner determines whether the benefits applicant has the "residual functional capacity"[3] to do the work he did before. <u>See</u> 20 C.F.R. § 404.1520(a)(4)(iv).

---

[3] Residual functional capacity is what "an individual is still able to do despite the limitations caused by his or her

If the applicant can do his past work, he is not disabled and gets no benefits.  See id.; Jones, 364 F.3d at 503.

If the applicant cannot do his past work, then the analysis moves to the fifth and final step.  See 20 C.F.R. § 404.1520(a)(4).

At step five, the Commissioner determines whether the applicant can do work other than his past work --- given his "residual functional capacity[,] . . . age, education, and work experience," 20 C.F.R. § 404.1520(a)(4)(v), and with an eye on the kinds of jobs that are available in the economy.  See Newell, 347 F.3d at 546.

If, given his residual functional capacity, the applicant can do other work --- then he does not get benefits.  See Jones, 364 F.3d at 503.

If, given his residual functional capacity, the applicant cannot do other work, then he is disabled and is therefore eligible for benefits.  See 20 C.F.R. § 404.1520(a)(4)(v).

### C.    This Case

Here, in the case of the Plaintiff, an ALJ worked through each of the above five steps.  See Loiska J., AR at 375-91.

More below as relevant on the ins and outs of the ALJ's analysis.

For now, note that the ALJ determined at step five that the Plaintiff was not entitled to benefits.  See id. at 391.  Given her residual functional capacity, the ALJ concluded, there was some work in the national economy that the Plaintiff could do. See id. at 389-91.

This conclusion, the Plaintiff argues, was wrong.

First, the Plaintiff argues, things should not have gotten to step five --- because the ALJ's analysis was improper at step three.  This argument is assessed in Part II.

_____

impairments."  Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001) (cleaned up).

Second, the Plaintiff contends, the residual functional capacity determination made by the ALJ rested on a set of errors.  That argument is taken up in Part III.

## II.  Step Three

At step three, the ALJ determined that the Plaintiff's impairments did not match up with any of the "listings" set out in the relevant regulations.  See id. at 376.

Because of this, the ALJ took one fork down the road, but not the other.

The ALJ did not hold that the Plaintiff was "per se disabled," Burnett, 220 F.3d at 119, and therefore entitled to benefits. See Loiska J., AR at 376-78.

Rather, the ALJ moved on to step four and looked to the Plaintiff's residual functional capacity.  See id. at 378.

Moving past step three and on to step four was an error, the Plaintiff argues, because her impairments were equivalent to two listings --- Listing 12.04 and Listing 12.06.  See Plaintiff's Brief 6-7, 10.  Therefore, the argument goes, she was per se disabled and that should have been the end of it.  She was entitled to benefits, and residual functional capacity questions were immaterial.

                    *     *     *

To evaluate the Plaintiff's argument, some quick background.

Listing 12.04 focuses on "[d]epressive, bipolar, and related disorders," 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.04, and Listing 12.06 zeroes-in on "[a]nxiety and obsessive-compulsive disorders."  Id. § 12.06.

Listing 12.04 and Listing 12.06 have certain building-block components.  These are commonly called the paragraph A criteria, the paragraph B criteria, and the paragraph C criteria.  See generally Gantt v. Comm'r Soc. Sec., 205 F. App'x 65, 66 (3d Cir. 2006).

A claimant's impairment is equivalent to Listing 12.04 or Listing 12.06 if (i) the paragraph A criteria and the paragraph B criteria are satisfied, or (ii) the paragraph A and the paragraph C criteria are met.  See 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(A)(2).

\*      \*      \*

Turn back now to this case.

Here, the ALJ determined that neither the paragraph B criteria nor the paragraph C criteria were met, see Loiska J., AR at 378 --- so the Plaintiff's impairments (as found by the ALJ at step two) did not qualify as a per se disability (at step three).

The Plaintiff challenges the ALJ's paragraph B and paragraph C conclusions here.  See Plaintiff's Brief at 6–33.

She mainly argues that these were not backed up by substantial evidence.  See id. at 6.

In assessing that argument, there are three main guideposts.

First, "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate" to support the relevant determination.  Burnett, 220 F.3d at 118 (cleaned up); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008).

Second, this Court's role is to decide if the ALJ's decision rested on a solid-enough foundation of "adequate" evidence --- not to determine how it might have weighed things out if it were the Court that was charged with making the front-line decision as to what the evidence adds up to in the first place.  See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (the court "must not substitute [its] own judgment for that of the fact finder"); see also Thomas v. Massanari, 28 F. App'x 146, 147 (3d Cir. 2002); Davern v. Comm'r of Soc. Sec., 660 F. App'x 169, 174 (3d Cir. 2016); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

And third, "the burden is on the claimant to present medical findings that show his or her impairment matches a listing or is equal in severity to a listed impairment."  Burnett, 220 F.3d at 120 n.2 (citing Williams, 970 F.2d at 1186).

With all this background, look now to whether substantial evidence supported the ALJ's conclusions that the paragraph B and paragraph C criteria were not met.

## A. **Paragraph B**

The paragraph B criteria concern four areas of mental functioning. <u>See</u> 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(E)(1)-(4).

These are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. <u>See id</u>.

Each area is evaluated on "a five-point" metric, that runs up the ladder from no limitation to a "mild, moderate, [or] marked" limitation, and then finally up to the top rung --- an "extreme" limitation. <u>Id</u>. § 12.00(F)(2).[4]

The paragraph B criteria are satisfied where a claimant (i) has an "extreme limitation" in one of the four areas of mental functioning, or (ii) a "marked limitation of two" of the four areas of mental functioning. <u>Id</u>.

---

[4] Per the regulations:

No limitation (or none): "You are able to function in this area independently, appropriately, effectively, and on a sustained basis." <u>Id</u>. § 12.00(F)(2)(a).

Mild limitation: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is <u>slightly limited</u>." <u>Id</u>. § 12.00(F)(2)(b) (emphasis added).

Moderate limitation: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is <u>fair</u>." <u>Id</u>. § 12.00(F)(2)(c) (emphasis added).

Marked limitation: "Your functioning in this area independently, appropriately, effectively, and on a sustained basis is <u>seriously limited</u>." <u>Id</u>. § 12.00(F)(2)(d) (emphasis added).

Extreme limitation: "You are <u>not</u> able to function in this area independently, appropriately, effectively, and on a sustained basis." <u>Id</u>. § 12.00(F)(2)(e) (emphasis added).

*     *     *

Here, the ALJ worked through each of the four mental functioning areas, see Loiska J., AR at 377-78, and decided that in each area the Plaintiff's limitation was below the threshold --- neither "marked" or "extreme."

Were each of these four decisions based on substantial evidence? Take that up now.

### 1.   **Substantial Evidence**

The first paragraph B mental functioning area is understanding, remembering, or applying information. See 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(E)(1).

The ALJ found the Plaintiff had a "moderate" limitation in this area. Loiska J., AR at 377.

In doing so, the ALJ considered evidence suggesting the Plaintiff had some difficulties with memory. The ALJ noted that the Plaintiff "tested as having some memory limitations at her August 16, 2012[] psychological consultative examination." Id. And that while the Plaintiff's "immediate memory was intact, . . . she was unable to perform any remote memory tasks" at her "November 19, 2013 psychological consultative examination." Id.

The ALJ also looked to evidence that tilted the other way --- evidence that suggested the Plaintiff's memory troubles were not quite as severe.

For example, the ALJ reviewed a report the Plaintiff submitted to the Social Security Administration in October 2013. See id. (citing Exhibit 4E, AR 206-12). And based on the report, the ALJ emphasized, the Plaintiff reported "not need[ing] any special reminders to take medications, care for her personal needs[,] or to go places." Id. In that same report, the Plaintiff represented that her "understanding" and "memory" were not impacted "by her conditions." Id.[5]

---

[5] The ALJ's decision might be read to suggest that these representations were made during the November 2013 consultative examination. But they do not appear in the consultative examiner's records. Instead, they can be found in the above-referenced October 2013 report, which the ALJ cited to in the relevant part of the decision. See Loiska J., AR at 377.

8

All of this evidence took some balancing out --- between the
more serious "remote" memory troubles identified in the November
2013 exam, and the less worrisome no-need-for-"special
reminders" conclusion of the October 2013 report.

In weighing things, the ALJ landed on the conclusion that the
Plaintiff's ability to understand, remember, or apply
information was "fair," and that she therefore had only a
moderate limitation in this area.  20 C.F.R. pt. 404, subpt. P,
App'x 1 § 12.00(F)(2)(c).

That conclusion was plainly supported by substantial evidence.
See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir.
2011) (the court is "not permitted to re-weigh the evidence or
impose [its] own factual determinations").

\*       \*       \*

The second paragraph B mental functioning area: interacting with
others.  See 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(E)(2).

Here, the ALJ also determined that the Plaintiff had a
"moderate" limitation.  Loiska J., AR at 377.

As before, the evidence tugged in two directions.

There was some evidence, identified by the ALJ, of serious
struggles.  Per the ALJ, the Plaintiff "testified to having mood
swings and snapping at people," and to "get[ting] panic attacks
when she leaves home and is in crowds."  Id.  The ALJ also noted
that the Plaintiff reported "not spend[ing] time with others" in
the above-referenced October 2013 report.  Id.

But not all the evidence was along those lines.

The ALJ analyzed the report of the Plaintiff's "November 24,
2013[] psychological consultative examination" and observed
that, as reflected in that report, the Plaintiff "exhibited
cooperative behavior" and "her manner of relating, social skills
and overall presentation" were marked by only "mild agitation."
Id.  Similarly, the ALJ noted that several medical professionals
examined the Plaintiff and identified only "mild social
limitations."  Id.  The ALJ also noted that the Plaintiff went
grocery shopping, used public transportation, took medicine to
manage panic attack symptoms, and seemed to have a smooth enough
time at work --- "get[ting] along well with bosses," and "never
[having] been fired or laid off because of problems getting
along with others."  Id.

Steering between the somewhat equivocal evidence put on the
table before her --- that was the ALJ's responsibility.  Here,
the ALJ assessed the relevant evidence and concluded that the
Plaintiff's ability to interact with others was "fair," and thus
that she had a moderate limitation in this area.  20 C.F.R. pt.
404, subpt. P, App'x 1 § 12.00(F)(2)(c),

That conclusion was backed up by substantial evidence, and there
is no basis for this Court to second-guess it.  See Chandler,
667 F.3d at 359.

\*     \*     \*

As to the third paragraph B area: concentrating, persisting, or
maintaining pace, see 20 C.F.R. pt. 404, subpt. P, App'x 1 §
12.00(E)(3), the ALJ found a "moderate" limitation.  Loiska J.,
AR at 377.

In getting there, the ALJ looked to evidence suggesting that the
Plaintiff could concentrate and pay attention.  See id. (noting
an examination report that described the Plaintiff's "attention
and concentration" as "intact").  That the Plaintiff could
"attend[] interviews, drive[] a car, use[] public
transportation, read[], finish what she starts, . . . and . . .
follow written and spoken instructions well."  Id.  and that the
Plaintiff could "handle money" and read in her spare time.  Id.

On the other hand, the ALJ also looked to some evidence
suggesting that the Plaintiff's "psychological impairments
impacted her attention and concentration."  Id.

In light of the pushes and pulls in the overall body of
information, the ALJ's "moderate" conclusion was supported by
substantial evidence.

\*     \*     \*

The fourth area of mental functioning is adapting or managing
oneself, see 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(E)(4),
as to which the ALJ determined the Plaintiff had a "mild"
limitation.  Loiska J., AR at 377.

As before, there was evidence on both sides of the ledger.

Some evidence before the ALJ suggested that the Plaintiff had
difficulties managing herself.  In particular, that her
"judgment ranged from fair to poor due to mood fluctuations,"
per the November 24, 2013 examination report.  Id.

But some evidence ran the other way.  For example, based on live
testimony from the Plaintiff and the report from the November 24
exam, the ALJ highlighted the Plaintiff's ability to "dress,
bathe, . . . groom herself[,] and do the laundry"; to "manage
money"; and to "travel[] independently through her community."
Id.  The ALJ also noted that the October 13 report showed the
Plaintiff could drive, use public transit, go to interviews, and
handle stress well enough.  See id. at 378.

In light of all this, the ALJ concluded that the Plaintiff's
adapting/managing limitation was "mild."  Id. at 377.  And the
information laid out in the preceding paragraphs shows that
conclusion was keyed to substantial evidence.

### 2.    Other Objections

For the reasons set out just above, the Plaintiff's no-
substantial-evidence argument does not work as to the ALJ's
paragraph B analysis.  See Part II.A.1.

The Plaintiff also presses some other objections to the ALJ's
paragraph B analysis.  Tick through these now.

                          *     *     *

To start, the Plaintiff argues that the ALJ failed to look at
"the combined effect of all of [her] impairments" at step three.
Plaintiff's Brief at 7.

But this is inaccurate.  The ALJ recognized her obligation to
look at the Plaintiff's "impairment or combination of
impairments" in her recitation of the governing law.  Loiska J.,
AR at 374 (emphasis added).  And she determined that the
Plaintiff did not have "an impairment or combination of
impairments that meets or medically equals the severity of one
of the listed impairments."  Id. at 376.

If this was not enough, it is for the Plaintiff to explain why.
She has not tried to do so.

                          *     *     *

Next, the Plaintiff contends the ALJ was required to follow a
specific "protocol," Plaintiff's Brief at 13, when working
through the paragraph B criteria.  See 20 C.F.R. pt. 404, subpt.
P, App'x 1 § 12.00(E).

But the underlying regulations do not require the analysis to run down a particular course --- with issues taken up, for example, in a specific order.

Rather, the regulations provide "examples [that] illustrate the nature of th[ese] area[s] of mental functioning," and they specifically note that "documentation of all of the examples" is "not require[d]."  20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(E)(1)-(4).  This is not prescriptive.  And it is a long way from a mandated "protocol."

Indeed, the Third Circuit has held that the ALJ does not need to "adhere to a particular format in conducting his [step three] analysis."  <u>Jones</u>, 364 F.3d at 505.  What matters is whether there was "sufficient development of the record and explanation of findings to permit meaningful review."  <u>Id</u>.  Here, there was.

*    *    *

The Plaintiff also argues that the ALJ should have zoomed in only on work-related maters --- and therefore should not have considered the Plaintiff's performance of her non-work-related daily activities.  <u>See</u> Plaintiff's Brief at 14-16.

But why not?

The question for the ALJ was, in part, how the Plaintiff managed herself.  So why look away from non-work-related evidence --- evidence as to whether, for example, she could drive herself around town or do her own grocery shopping?  That sort of evidence can plainly shed light on how a person might handle themselves at work.

Similarly, the question before the ALJ was, in part, about the extent of the Plaintiff's memory troubles.  So why not ask whether, for example, the Plaintiff needed reminders to take her medications --- a non-work-related issue?  Would that not speak to how her sharp her memory might be on the job?

In this context, laying down hard boundary markers between one category of evidence and another would have been artificial.  It would not have been true to life.  How a person handles the non-work-activities the ALJ considered here suggest things about a person's mental functioning more generally --- and therefore can help to clarify the sort of work she might be able to do. Categorically ignoring the non-work evidence put in play here would have been at odds with common sense.  And in this case,

12

lopping off that evidence could have diminished, not enhanced, the accuracy of the ALJ's decision-making.

The regulations do not suggest any need to look away from all non-work-related evidence. And the caselaw does not either. See Marilyn H. v. Comm'r of Soc. Sec., 2024 WL 1092503, at *6 (D.N.J. Mar. 13, 2024) (holding that "[u]se of daily activities" to "support[] a finding that Plaintiff had no marked or extreme limitations in the 'B' criteria areas . . . is permissible"); Adrienne L. v. O'Malley, 2024 WL 208963, at *13 (D.N.J. Jan. 19, 2024) ("It was also proper for the ALJ to consider other record evidence, including Plaintiff's daily life activities, when analyzing Dr. Brown's findings and the extent of Plaintiff's mental impairments."); Trzeciak v. Colvin, 2016 WL 4769731, at *5 (D.N.J. Sept. 12, 2016) (affirming an ALJ's conclusion that the paragraph B criteria were not satisfied, which was based in part on the plaintiff's report that she could "clean, do the laundry, wash the dishes, and prepare simple meals three times a week") (cleaned up); Freeman v. Comm'r of Soc. Sec., 2014 WL 1293865, at *6 (M.D. Pa. Mar. 31, 2014) (affirming an ALJ's conclusion that the paragraph B criteria were not satisfied, which was based in part on the plaintiff's ability to "cook simple meals, clean, shop, take care of his personal needs, and manage funds competently"); Jacqueline M.J. v. O'Malley, 2024 WL 4234964, at *5 (D. Minn. Sept. 19, 2024) (similar).

\*    \*    \*

The Plaintiff's next argument: the ALJ's paragraph B analysis must be put aside because it did not account for her treating physician's reports of "panic attacks, major depression and mood swings indicative of bipolar disorder." Plaintiff's Brief at 23.

But the ALJ did note the treating physician's diagnosis of "major depression, anxiety and . . . panic attacks." Loiska J., AR at 383. The ALJ just concluded that the physician's opinion should be given only "little weight" because it was "inconsistent with the [Plaintiff's] own testimony and [the consultative examiner's] . . . findings," was "not well supported by medically acceptable clinical techniques[,] and [wa]s not consistent with the other substantial evidence in the record." Id. at 386.

Similarly, the Plaintiff contends that the ALJ did not work through three particular pieces of information from the reports

of the consultative examiner: (1) her specific diagnoses; (2)
her conclusion that the Plaintiff "would have difficulty
learning new tasks due to difficulties with memory"; and (3) her
conclusion that the Plaintiff presented with "psychiatric
problems which may significantly interfere with [her] ability to
function on a daily basis." Plaintiff's Brief at 23 (cleaned
up).

But same point. The ALJ discussed many of the specific points
the Plaintiff raised. See Loiska J., AR at 383 (noting the
consultative examiner "diagnosed major depressive disorder
without psychotic features" and "rule[d] out bipolar [disorder]"
following the first examination); id. at 384 (noting the
consultative examiner diagnosed the Plaintiff with "depressive
disorder" after the second examination); id. at 386 (noting the
examiner's finding that the Plaintiff "would have difficulties
in learning new tasks and performing complex tasks independently
due to difficulty with memory").[6]

### B. **Paragraph C**

For the reasons set out above, the Plaintiff's challenge to the
ALJ's paragraph B determination does not work. See Part II.A.
Take up now her challenges to the paragraph C determination.

To meet the requirements of paragraph C, a claimant must
establish (1) the existence of a mental health disorder lasting
more than two years, see 20 C.F.R. pt. 404, subpt. P, App'x 1
§ 12.00(G)(2)(a); (2) reliance on "medical treatment, mental
health therapy, psychosocial support[], or a highly structured
setting[]" to manage symptoms, id. § 12.00(G)(2)(b); and (3)
"minimal capacity to adapt to changes in [her] environment or to

---

[6] It may be that the Plaintiff's argument is that while the ALJ
analyzed certain reports, she did not do so as part of the
paragraph B analysis in particular. But that runs aground on
the Third Circuit's directive to "read [the decision] as a
whole." Jones, 364 F.3d at 505. (And note: if every piece of
evidence does not need to be explicitly discussed by the ALJ, as
the Third Circuit has suggested, see, e.g., Fargnoli, 247 F.3d
at 42, then it would seem to follow that there is generally no
problem when the ALJ works through a piece of evidence (as
here), but is said to have done so in the wrong spot in her
opinion.)

demands that are not already part of [her] daily life." Id. § 12.00(G)(2)(c).

* * *

As to the second paragraph C requirement, the Plaintiff presses three arguments. First, that she "h[as] a history of mental health therapy offering psychological support." Plaintiff's Brief at 28. Second, that she takes "numerous psychotropic medications." Id. And third, that she "lives alone . . . in an acknowledged solitary existence without relationships with friends or family members." Id.

As to the first argument, related to therapy, the Plaintiff points to no record evidence that was put before the ALJ. Nor does she explain what therapy she assertedly received. Or describe any specific providers, or how often she received treatment from them.

Similar problem as to her second argument, related to medications. The Plaintiff provides no description of what evidence was before the ALJ --- as to the medications the Plaintiff assertedly took, the frequency with which they were taken, etc.

As to the third and final point --- the assertion that the Plaintiff "lives alone," id., is supported by a cite to evidence before the ALJ. See id. But living alone is not uncommon, and having little to no relationship with family and friends is not necessarily very uncommon either. There is no reason to think this is especially clarifying in this context, and the Plaintiff does not explain how living alone constitutes "a highly structured setting," 20 C.F.R. pt. 404, subpt. P, App'x 1 § 12.00(G)(2)(b), as it must for the purposes of the second paragraph C requirement.

* * *

In sum: because the Plaintiff has not articulated how she satisfied the paragraph C criteria based on the evidence put before the ALJ, her challenge to the ALJ's paragraph C analysis must fail.

### III. Residual Functional Capacity

The ALJ held that the Plaintiff was not per se disabled (at step three) because her impairments were not equivalent to Listing

12.04 or Listing 12.06 --- and for the reasons set out above in Part II, there is no basis for displacing the ALJ's conclusion.

Because of her step three conclusion, the ALJ moved on to consider the Plaintiff's residual functional capacity.

Recall that "[r]esidual functional capacity is . . . that which an individual is still able to do despite the limitations caused by his or her impairments." Fargnoli, 247 F.3d at 40 (cleaned up).

And per the ALJ, this was the Plaintiff's residual functional capacity:

> She is able to understand, remember, and perform simple, routine and repetitive tasks; in a work environment free of fast-paced production requirements, such as working on a conveyer belt; and can have occasional interaction with the public and coworkers, however, may have frequent interaction with coworkers within the first 60-90 days while training.

Loiska J., AR at 378.

*     *     *

The Plaintiff's main argument: that the quoted residual functional capacity assessment leaned too heavily on "the findings [of the consultative examiner] tending to show [the] [P]laintiff can work," while giving "absolutely no weight to the findings [of the consultative examiner] that prove she can't." Plaintiff's Brief at 38-39.

This argument does not work.

The ALJ was not required to take the consultative examiner's opinion in an all-or-nothing way. Rather, the ALJ was entitled to do what she did --- to lean more heavily on only part of the examiner's opinion. See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary may properly accept some parts of the medical evidence and reject other parts[.]"); see also, e.g., Barrett v. Saul, 840 F. App'x 916, 919 (9th Cir. 2020) (affirming an ALJ's decision to "giv[e] less weight to one aspect of" a doctor's opinion); Stancavage v. Saul, 469 F. Supp. 3d 311, 328 (M.D. Pa. 2020) ("An ALJ is also entitled generally to credit parts of an opinion without crediting the entire opinion.") (cleaned up); Connors v. Astrue, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011) (concluding substantial evidence

supported an ALJ's decision to "credit some parts [of a medical opinion] while discrediting others"); Eric W. v. O'Malley, 2024 WL 4333297, at *3 (N.D. Ill. Sept. 27, 2024) ("An ALJ is not required to credit every part of a medical opinion just because he credits one part.") (cleaned up).

And to the extent the ALJ was required to "give some reason for discounting the evidence she rejects," Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505–06 (3d Cir. 2009), the ALJ did that here.

Per the ALJ, the consultative examiner's determination that the Plaintiff "was able to follow and understand simple directions and instructions, was able to perform many simple tasks independently, would be able to maintain a regular schedule[,] and would be able to maintain attention and concentration" --- all of this was given real weight because it linked up with the Plaintiff's "reported activities of daily living" and "the record." Loiska J., AR at 386.

But the other key part of the consultative examiner's findings, as to the Plaintiff's "difficulties in learning new tasks and performing complex tasks independently due to [her] memory," id. --- this, per the ALJ, was entitled to less credit. Why? Because it stood out there on its own, the ALJ explained, not meaningfully supported by other evidence. See id. at 386–87 (concluding this opinion was, among other things, at odds with the fact that the Plaintiff "resides alone, is relatively independent in activities of daily living, . . . has denied needing special reminders[,] and has been found to have intact memory").

This Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations," see Chandler, 667 F.3d at 359, and the ALJ's decision to rest on the more corroborated part of the consultative examiner's findings will not be disturbed.[7]

---

[7] The Plaintiff also argues that the ALJ's residual functional capacity assessment did not consider some of her limitations in mental functioning. See Plaintiff's Brief at 41–43. But this is at odds with the record. See, e.g., Loiska J., AR at 384 ("In regard to her depression, the claimant would only be impacted minimally in her social interaction with the public or coworkers, and moderately in understanding, remembering and

*    *    *

There are, though, two aspects of the ALJ's residual functional capacity conclusion that will require a limited remand.

*    *    *

First, the ALJ determined that the Plaintiff was ordinarily limited to "occasional interaction with the public and coworkers," Loiska J., AR at 378, but could have "frequent interaction with coworkers within the first 60-90 days while training." Id.

But it is not clear why the Plaintiff would be unable to have certain interactions in the long run (as the ALJ held), but could be expected to have seemingly similar interactions during her training period (as the ALJ also held).

This necessitates a remand, so that the ALJ can analyze this issue.

Courts throughout the Nation have so held in closely similar circumstances. See Leitz v. Kijakazi, 2023 WL 4342114, at *2 (9th Cir. July 5, 2023); Peter T.S. v. Dudek, 2025 WL 964959, at *5-6 (N.D. Ill. Mar. 31, 2025); Yazmin Q. v. O'Malley, 2024 WL 4567277, at *6 (E.D. Pa. Oct. 24, 2024); Scott v. O'Malley, 2024 WL 4817729, at *7-8 (D. Del. Nov. 18, 2024); S.B. v. Comm'r of Soc. Sec., 2022 WL 16701880, at *3 (D.N.J. Feb. 15, 2022); Clarissa W.-J. v. O'Malley, 2024 WL 3541932, at *18-20 (D. Minn. July 10, 2024), report and recommendation adopted, 2024 WL 3540855 (D. Minn. July 25, 2024); Cook v. Kijakazi, 2022 WL 1711654, at *2 (E.D. Pa. May 27, 2022); N.B. v. Comm'r of Soc. Sec. Admin., 2022 WL 263431, at *6 (D.N.J. Jan. 28, 2022); Weber v. Saul, 2021 WL 99988, at *6 (W.D. Wis. Jan. 12, 2021); Clampit v. Comm'r of Soc. Sec., at *6 (N.D. Ohio Mar. 30, 2023), report and recommendation adopted, 2023 WL 2956613 (N.D. Ohio Apr. 14, 2023); Slate v. Kijakazi, 2022 WL 1046290, at *6 (D. Nev. Apr. 6, 2022); Shahitta C. v. Comm'r of Soc. Sec., 2023 WL 8797918, at *2 (W.D.N.Y. Dec. 20, 2023).[8]

_____

applying information, and in concentration, persistence or pace and mildly in activities of daily living.").

[8] For instances in which fuller analysis was undertaken, see, for example, Karrissa D. v. Bisignano, 2025 WL 2779140, at *5 (D. Minn. Sept. 30, 2025); and Jess B. v. Kijakazi, 2023 WL 6457322,

*     *     *

On remand, the ALJ shall also analyze a <u>second</u> issue.

As part of her residual functional capacity analysis, the ALJ determined that the Plaintiff had a moderate limitation in interacting with others, <u>see</u> <u>Loiska J.</u>, AR at 377, and therefore could have only "occasional interaction with the public and coworkers." <u>Id</u>. at 378.

But if limits on interactions with the "public and coworkers," <u>id</u>., were required on account of the Plaintiff's moderate limitation, then case-specific analysis is required as to whether limits were also needed as to the Plaintiff's interactions with supervisors. <u>See</u>, <u>e.g.</u>, <u>Matchett</u> v. <u>Comm'r,</u> <u>Soc. Sec. Admin.</u>, 2019 WL 581801, at *3 (D.N.J. Feb. 13, 2019) ("The Court cannot determine on the present record why the ALJ did not include in the residual functional capacity determination a limitation on interaction with supervisors when the evidence --- to which the ALJ gave significant weight --- would appear to support such a limitation, consistent with the limitations the ALJ placed on interactions with the public and co-workers."); <u>Peggy C.</u>, 2021 WL 3206812, at *6-7 (similar); <u>Veronica B.</u>, 2022 WL 131136, at *6 (similar).[9]

*     *     *

## IV.  <u>Conclusion</u>

The Commissioner's determination here is largely supported by substantial evidence and is affirmed as to steps one, two, and three.

---

at *9 (S.D. W. Va. Aug. 21, 2023), <u>report and recommendation</u> <u>adopted</u>, 2023 WL 6449442 (S.D. W. Va. Oct. 3, 2023).

[9]  It may be appropriate on remand for the ALJ to consider new evidence or new argument as to the two issues identified in the text.  But the precise scope of the remand, beyond the requirement to provide a fuller analysis on the two issues, is for the ALJ to take up.  (If the analysis alluded to in the text leads to bottom-line changes in the ALJ's residual functional capacity assessment, then the ALJ should work through on remand the implications of any such changes for her overall step four and step five analysis.)

But the Commissioner's residual functional capacity assessment must be vacated.   This is not a remand as to the entirety of the ALJ's work.   See Sullivan v. Hudson, 490 U.S. 877, 885 (1989) (observing that district courts can determine "the scope of the remand").   On remand, the Commissioner shall address the two discrete issues discussed in Part III, and, if necessary, their implications for the rest of the analysis.   See footnote 9.


IT IS on this 14th day of January, 2026, **SO ORDERED**.

Michael E. Farbiarz, U.S.D.J.